UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, DISTRICT LODGE 4, LOCAL LODGE S25, | ) ) ) ) ) | |
| Plaintiff | ) ) | 2:18-cv-00121-GZS |
| v. | ) ) | |
| JDD, INC., | ) ) | |
| Defendant | ) | |

**RECOMMENDED DECISION ON PLAINTIFF'S
REQUEST TO VACATE ARBITRATION AWARD**

Plaintiff International Association of Machinists and Aerospace Workers, District Lodge 4, Local Lodge S25 (Plaintiff or the Union), requests judicial review of an arbitration determination that Defendant JDD, Inc. terminated William Mattis's employment and his insurance benefits in accordance with the governing collective bargaining agreement. Plaintiff asks the Court to vacate the arbitration decision.

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court deny Plaintiff's request.[1]

---

[1] Neither party has objected to this Court's exercise of jurisdiction. The Federal Arbitration Act authorizes "the United States court in and for the district wherein the award was made" to review an arbitration award. 9 U.S.C. § 10(a). While it appears that the arbitration award may have been "made" in the District of New Hampshire, the Labor Management Relations Act (LMRA) provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce … may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). "For the purposes of actions and proceedings by or against labor organizations …, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged

## BACKGROUND[2]

Plaintiff and Defendant are parties to a collective bargaining agreement (CBA). The CBA governs matters related to "wages, hours of work, and conditions of employment," and "provide[s] procedures for prompt, equitable adjustments of alleged grievances." (CBA, Article 1, ECF No. 19-1.) Under the CBA, Plaintiff may prosecute grievances on behalf of employees "concerning the effect, interpretation, application, claim of breach or violation of this Agreement, or any other dispute pertaining to wages, hours or working conditions." (*Id.*, Article 8, § 1.) If a grievance cannot be resolved through the grievance process, the matter can be submitted to arbitration. (*Id.*, Article 8, § 4.) According to the CBA, the parties agreed that "[t]he award of the Arbitrator shall be final and binding." (*Id.*, Article 8, § 4(b).)

Article 11 of the CBA addresses the availability of a leave of absence for union members. The types of available leave include union representative leave, armed forces leave, bereavement leave, and leave on account of injury. (*See id.,* Article 11, § 7 ("Injury, Hardship or Sickness Leaves of Absence").) A leave of absence is limited to 90 days, but the leave can be extended by mutual agreement.

---

in representing or acting for employee members. *Id.* § 185(c). Because the LMRA is specific to CBA disputes, its provisions govern. *Alcan Packaging Co. v. Graphic Commc'n Conference*, *Int'l Bhd. of Teamsters & Local Union No. 77-P*, 729 F.3d 839, 841 (8th Cir. 2013), *as corrected* (Oct. 30, 2013). Given that this dispute arises out of a collective bargaining agreement involving Defendant's employment of union members at the Portsmouth Naval Shipyard in Kittery, Maine, this Court has subject matter jurisdiction under the LMRA.

[2] The facts are derived from the stipulated administrative record (ECF No. 19) and the uncontested findings in the arbitration decision.

2

Mr. Mattis worked for Defendant and for Defendant's predecessor at the Portsmouth Naval Shipyard for more than 20 years. On June 10, 2016, Mr. Mattis fell at work and sustained an injury. He drove himself to the hospital, where he received one or more diagnostic radiology examinations. He was discharged and instructed to follow-up with a neurosurgeon. (Arbitration Award at 3, ECF No. 19-24; Discharge Summary, ECF No. 19-7.)

On June 21, 2016, in a note provided to Defendant, a physician wrote that Mr. Mattis must be excused from work until further notice. (Ex. 8, ECF No. 19-8.) Although Mr. Mattis filed and pursued a claim for workers' compensation benefits, neither he nor Plaintiff directly asked for a leave of absence under Article 11 of the CBA. The arbitrator found that for a six-month period following the incident, Mr. Mattis and Plaintiff did not provide Defendant with an anticipated return to work date. (Arbitration Award at 3.)

Mr. Mattis's membership in the Union and his full-time employment status with Defendant entitled him to certain health and welfare benefits. (*Id.*, Participation Agreement Addendum, PageID # 122.) The benefits included coverage for a period for medical leave of absence, with a maximum duration of six months. (*Id.*, PageID # 123.)

On December 31, 2016, Defendant discontinued Mr. Mattis's medical coverage pursuant to the six-month limitation. (Arbitration Award at 3.) On February 7, 2017, Plaintiff filed a grievance to challenge this action. Plaintiff asserted in the grievance that Mr. Mattis was "out of work on a work related injury." (Ex. 3, ECF No. 19-3.)

In January 2017, Defendant contacted its workers' compensation insurer to obtain an update on Mr. Mattis's condition. The insurer provided a medical report by a

consultative examining physician, Peter Esponnette, M.D., who advised that Mr. Mattis had a 50% chance to return to regular duty by mid-June. (Arbitration Award at 4; Ex. 10, ECF No. 19-10.)

On March 7, 2017, Defendant notified Mr. Mattis that his employment was tentatively terminated subject to his ability to provide updated medical confirmation of an earlier and definitive return to work date. (Arbitration Award at 4 – 5; Termination Letter, Ex. 12, ECF No. 19-12.) Neither Plaintiff nor Mr. Mattis provided a response to Defendant's notification. (Arbitration Award at 5.) On March 24, 2017, Plaintiff filed a related grievance asserting that Mr. Mattis was "out of work on workman's comp for an injury at work," and that Mr. Mattis was "not on a leave of absence." (Ex. 2, ECF No. 19-2.)

Following the parties' failure to resolve the grievances, on May 22, 2017, Plaintiff requested arbitration pursuant to Article 8 of the CBA. (Ex. 4, ECF No. 19-4.) An arbitration hearing was conducted on October 27, 2017. (Arbitration Award at 1.) At the hearing, Defendant maintained that following his injury, Mr. Mattis was on a leave of absence, and that the extended length of the leave (nine months) permitted Defendant to terminate Mr. Mattis's medical coverage and employment, particularly given the report of an indefinite time for his return to work. (Ex. 19, ECF No. 19-19.) Plaintiff argued that Mr. Mattis's injury-related leave was not a leave of absence under the CBA, and thus "the adverse actions were taken without authority in the CBA." (Ex. 20, ECF No. 19-20.)

The leave of absence provision states, in relevant part:

> Section 7. Injury, Hardship or Sickness Leaves of Absence. An Employee desiring leave of absence from his employment shall secure written permission from the Employer. The maximum leave of absence shall be for (90) days. An extension of up to six (6) months may be granted when required by mutual agreement between the employee and Employer. Permission for leave must be secured from the Employer with a copy mailed to the Union. Granting of leave of absence shall be for the following reasons, sickness, death in the immediate family and in the case of compensation injuries of occupational disease. …

(CBA Article 11 (emphasis added).)

The arbitrator rejected Plaintiff's contention that leave due to an injury covered by workers' compensation insurance does not constitute a leave of absence within Article 11 of the CBA. The arbitrator also rejected the argument that leave under Article 11 only applied when Plaintiff or a union member directly requested a leave of absence under Article 11. The arbitrator determined that Mr. Mattis's doctor-approved leave was a medical leave of absence within the scope of Article 11.

In support of his finding that Article 11 governed Mr. Mattis's leave, the arbitrator noted that the heading of Article 11 ("Injury, Hardship or Sickness Leaves of Absence"). The arbitrator also concluded that the substance of Article 11 supported his determination. A leave of absence under Article 11 was available for "sickness, death in the immediate family and in the case of compensation injuries of occupational disease." The arbitrator reasoned that the concluding phrase, "in the case of compensation injuries of occupational disease" was undoubtedly a typographical error and should be read as "in the case of compensation injuries *or* occupational disease," and applied to Mr. Mattis's leave. The arbitrator, therefore, determined that Defendant terminated Mr. Mattis's employment and insurance coverage in accordance with the CBA. (Arbitration Award at 10 – 14.)

5

## DISCUSSION

### A. Standard of Review

When the parties agreed to submit their dispute to binding arbitration, they agreed that they would accept "arbitrator's view of the facts and of the meaning of the [collective bargaining agreement]." *United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 37 – 38 (1987). This Court's review of the arbitrator's award "must be 'extremely narrow and exceedingly deferential.'" *UMass Mem'l Med. Ctr., Inc. v. United Food & Commercial Workers Union, Local 1445*, 527 F.3d 1, 5 (1st Cir. 2008) (quoting *Bull HN Info. Sys., Inc. v. Hutson*, 229 F.3d 321, 330 (1st Cir. 2000)). "[J]udicial review of arbitration awards is 'among the narrowest known in law.'" *N. New England Tel. Operations LLC v. Local 2327, Int'l Bhd. of Elec. Workers, AFL-CIO*, 735 F.3d 15, 21 (1st Cir. 2013) (quoting *Me. Cent. R.R. Co. v. Bhd. of Maint. of Way Emps.*, 873 F.2d 425, 428 (1st Cir. 1989)).

To be enforceable, "the arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice." *Misco*, 484 U.S. at 38. A court must accept the arbitrator's factual findings and must limit its review to "determining if the arbitrator's interpretation of the contract is in any way plausible." *Labor Relations Div. of Constr. Indus., Inc. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers, Local No. 379*, 29 F.3d 742, 745 (1st Cir. 1994). Under this standard, even if a court might have reached a different result, the court is required to

6

uphold the award unless the arbitrator was not "even arguably construing or applying the contract and acting within the scope of his authority." *Misco*, 484 U.S. at 38.

## B. Discussion

Plaintiff contends the arbitrator erred in certain factual findings, including that Mr. Mattis wanted and requested a leave under Article 11, mischaracterized the nature of the dispute (i.e., that Plaintiff believed he was entitled to indefinite protection from discharge), misapplied the law, improperly interpreted or rewrote the terms of Article 11, and disregarded the plain language of the CBA. While Plaintiff makes several arguments in support of his challenge to the arbitrator's decision, the gravamen of Plaintiff's argument is that the arbitrator's interpretation of and application of Article 11 is not supportable.

A review of the record reveals that the arbitrator considered the evidence presented, which included the CBA, made factual findings, and applied relevant legal principles. Given the evidence of record, including the June 21, 2016, note from Mr. Mattis's doctor that Mr. Mattis would be out of work until further notice (ECF No. 19-8) and the report from Dr. Esponnette that Mr. Mattis had only a 50% chance of returning to work by mid-June 2017 (ECF No. 19-10), and given the reason for the leave (i.e., a work-related injury), the arbitrator's finding that Mr. Mattis's leave of absence was a leave under Article 11 does not, as Plaintiff argues, warrant vacating the arbitration award.

Plaintiff's contention that Plaintiff would not have invoked and did not invoke the leave provisions of the CBA because the workers' compensation law affords certain protections to individuals who suffer work-related injuries is unpersuasive. While an injured worker might have, in certain circumstances, a disability discrimination claim if an

7

employer terminated his or her employment because the employee filed a claim for workers' compensation benefits, the employee's absence from work due to the claimed injury is nevertheless governed by the parties' employment agreement. The workers' compensation law does not include a leave policy, nor does it prescribe a leave period. In fact, an employee's reinstatement rights under Maine's Workers' Compensation Act, 39-A M.R.S. § 218, demonstrate that an employee's protection under the Act is not a leave period, but the ability to seek reinstatement to the employee's position.[3] Here, without use of the leave period, there would be no basis, contractual or otherwise, for Plaintiff to remain out of work for an extended period of time without Defendant having the ability to hire a replacement. Under the circumstances and given the evidence of record, the arbitrator supportably concluded that the note from Plaintiff's physician constituted a request for leave.

Furthermore, the arbitrator's interpretation of the contract was within his authority and represents a reasonable interpretation of the contract. A court's review of "matters of contract interpretation[] is extremely narrow and extraordinarily deferential." *Labor Relations Div.*, 29 F.3d at 745 (internal quotation marks omitted). To give meaning to the language as written – "in the case of compensation injuries of occupational disease" – is challenging. In construing Article 11, the arbitrator did not, as Plaintiff argues, impermissibly ignore the plain language or rewrite the agreement. The arbitrator's

---

[3] The statute provides that an employee can seek reinstatement to the employee's position if the position "is available and suitable to the employee's physical condition," or if the position is not available, reinstatement "to any other available position suitable to the employee's physical condition." 39-A M.R.S. § 218(1).

interpretation of the language of Article 11 was within his authority and constituted a "plausible" interpretation of the agreement. *Id*.

In short, the arbitrator permissibly concluded that Mr. Mattis's leave was governed by and within the scope of Article 11, section 7, of the CBA; that Mr. Mattis's injury-related leave commenced the six-month continuation period for Mr. Mattis's health and welfare coverage; and that under the circumstances, Defendant's decision to terminate Mr. Mattis's employment after nine months of leave was in accordance with the CBA.

## CONCLUSION

Based on the foregoing analysis, I recommend that the Court deny Plaintiff's request to vacate the arbitration award. (ECF No. 20.)

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 14th day of November, 2018.